## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>STATE OF TEXAS,<br><br>　　　　　　*Plaintiffs,*<br><br>v.<br><br>CONSTELLATION ENERGY CORPORATION,<br><br>CALPINE CORPORATION,<br><br>and<br><br>CPN CS HOLDCO CORP.,<br><br>　　　　　　*Defendants.* | Case No. 1:25-cv-04235-ABJ |

## FINAL JUDGMENT

WHEREAS, Plaintiffs, United States of America and the State of Texas ("Texas"), filed their Complaint on December 5, 2025;

AND WHEREAS, Plaintiffs and Defendants, Constellation Energy Corporation, Calpine Corporation, and CPN CS Holdco Corp., have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Defendants agree to make certain divestitures to remedy the loss of competition alleged in the Complaint;

2

AND WHEREAS, Defendants represent that the divestitures and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.     JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act (15 U.S.C. § 18).

## II.    DEFINITIONS

As used in this Final Judgment:

A.      "Acquirer" or "Acquirers" means the entity or entities approved by the United States, in its sole discretion, to which Defendants divest any of the Divestiture Assets or with which Defendants, after approval by the United States in its sole discretion, have entered into definitive contracts to sell any of the Divestiture Assets. The word "Acquirer" in this Final Judgment may have both singular and plural meaning.

B.      "Calpine" means Defendant Calpine Corporation, a Delaware corporation with its headquarters in Houston, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C.      "Constellation" means Defendant Constellation Energy Corporation, a Pennsylvania corporation with its headquarters in Baltimore, Maryland, its successors and

3

assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.     "CPN" means Defendant CPN CS Holdco Corp., a Delaware corporation headquartered in Houston, Texas and a direct, wholly-owned subsidiary of Calpine. Calpine created CPN as a vehicle for its sale to Constellation.

E.     "Divestiture Assets" means the ERCOT Divestiture Assets and the PJM Divestiture Assets.

F.     "Divestiture Date" means each date on which the ERCOT Divestiture Assets or the PJM Divestiture Assets are divested to an Acquirer or Acquirers under this Final Judgment. There may be different Divestiture Dates for each of the ERCOT Divestiture Assets and each of the PJM Divestiture Assets.

G.     "ERCOT" means the Electric Reliability Council of Texas, Inc., 8000 Metropolis Drive, Building E, Suite 100, Austin, Texas 78744.

H.     "ERCOT Divestiture Assets" means all of Defendants' rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in connection with the generation, dispatch, and offer of electricity from the ERCOT Divestiture Facilities, including:

    1.     the ERCOT Divestiture Facilities;

    2.     all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

4

3.      all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

4.      all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

5.      all contracts, contractual rights, or other agreements, commitments, and understandings relating to employment of Relevant Personnel who elect employment with an Acquirer pursuant to Paragraph IV.J within 180 calendar days of the Divestiture Date;

6.      all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

7.      all equipment associated with connecting to ERCOT (including automatic generation control equipment);

8.      all remote start capability or equipment;

9.      all other interests, assets, or improvements;

10.     all records and data, including (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, (d) records and research data relating to historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments, and (e) drawings, blueprints, and designs;

5

11.     all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

12.     all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) computer software and related documentation, know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, (d) design tools and simulation capabilities, and (e) rights in internet web sites and internet domain names.

*Provided, however*, that the ERCOT Divestiture Assets do not include Excluded Assets.

I.     The "ERCOT Divestiture Facilities" means:

1.     Jack A. Fusco Energy Center, a natural gas combined cycle plant, located at 3440 Lockwood Rd, Richmond, TX 77469, and its contents; and

2.     Calpine's interest in the Gregory Power Plant, a natural gas combined cycle plant, located at 4633A TX-361, Gregory, TX 78359.

J.     "Excluded Assets" means master parts and services agreements, master consulting or professional services agreements, master subscription and software licenses and any other assets, rights, or properties of Defendants that Defendants use on a corporate-wide basis, ERCOT-wide basis, or PJM-wide basis. Any asset, right, or property necessary for the Acquirer to operate a Divestiture Asset that is transferable within the Defendants' control and not otherwise reasonably available to the Acquirer is not an Excluded Asset. The United States, in its

6

sole discretion, after consultation with Texas, will resolve any disagreement relating to which assets, rights, or properties are Excluded Assets.

K.    "Good Utility Practice" means any of the applicable practices, methods and acts (a) required by Federal Energy Regulatory Commission, North American Electric Reliability Council, Mid-Atlantic Area Council, PJM, ERCOT, or the successor of any of them, whether or not the party whose conduct is at issue is a member thereof, (b) required by applicable law or regulation, or (c) any of the practices, methods and acts which, in the exercise of reasonable judgment in the light of the facts known at the time the decision was made, could have been expected to accomplish the desired result at a reasonable cost consistent with good business practice, reliability, safety and expedition. "Good Utility Practice" is not intended to be limited to the optimum practice, method, or act to the exclusion of all others, but rather is intended to include acceptable practices, methods, or acts generally accepted in the region.

L.    "Including" means including, but not limited to.

M.    "Offer" or "Offers" means either (1) an offer to sell energy submitted into the PJM Market pursuant to the version of PJM "Amended and Restated Operating Agreement of PJM Interconnection, LLC," available at www.pjm.com in effect at the time the offer is made, or (2) an offer to sell energy submitted into the ERCOT Market pursuant to the Real-Time and Day-Ahead Market rules, as defined in the ERCOT Nodal Protocols, available at https://www.ercot.com/mktrules/nprotocols/current, in effect at the time the offer is made.

N.    "PJM" means PJM Interconnection, LLC, 2750 Monroe Blvd., Audubon, Pennsylvania 19403.

O.    "PJM Divestiture Assets" means all of Defendants' rights, titles, and interests in and to all property and assets, tangible and intangible, wherever located, relating to or used in

7

connection with the generation, dispatch, and offer of electricity from the PJM Divestiture Facilities, including:

1.    the PJM Divestiture Facilities;

2.    all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

3.    all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

4.    all contracts, contractual rights, and customer relationships, and all other agreements, commitments, and understandings, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

5.    all contracts, contractual rights, or other agreements, commitments, and understandings relating to employment of Relevant Personnel who elect employment with an Acquirer pursuant to Paragraph IV.J within 180 calendar days of the Divestiture Date;

6.    all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

7.    all equipment associated with connecting to PJM (including automatic generation control equipment);

8.    all remote start capability or equipment;

8

9.    all other interests, assets, or improvements;

10.    all records and data, including (a) customer lists, accounts, sales, and credit records, (b) production, repair, maintenance, and performance records, (c) manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees, (d) records and research data relating to historic and current research and development activities, including designs of experiments and the results of successful and unsuccessful designs and experiments, and (e) drawings, blueprints, and designs;

11.    all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

12.    all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) computer software and related documentation, know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, (d) design tools and simulation capabilities, and (e) rights in internet web sites and internet domain names.

Provided, however, that the PJM Divestiture Assets do not include any Excluded Assets.

P.    "PJM Divestiture Facilities" means the following facilities and their contents:

1.    Bethlehem Energy Center, a natural gas combined cycle plant, located at 2254 Applebutter Road, Bethlehem, PA 18015;

9

2.    York 1 Energy Center, a dual-fuel combined cycle natural gas plant, located at 1055 Pikes Peak Road, Delta, PA 17314;

3.    York 2 Energy Center, a dual-fuel combined cycle natural gas plant, located at 1597 Atom Road, Delta, PA 17314;

4.    Hay Road Energy Center, a dual-fuel combined cycle natural gas plant, located at 198 Hay Road, Wilmington, DE 19809; and

5.    Edge Moor Energy Center, a simple cycle natural gas plant, located at 200 Hay Road, Wilmington, DE 19809.

Q.    "Regulatory Approvals" means (1) any approvals or clearances from the Federal Energy Regulatory Commission or any local, state, or other federal regulatory body that are required for the Transaction to proceed; and (2) any approvals or clearances from the Federal Energy Regulatory Commission or any local, state, or other federal regulatory body that are required for an Acquirer's acquisition of any Divestiture Asset to proceed.

R.    "Relevant Personnel" means all full-time, part-time, or contract employees of Defendants, wherever located, who as of the date of filing this document with the Court are or have been stationed at or assigned to a specific Divestiture Asset and are involved in the operation of a Divestiture Asset, for the period between the date of the filing of this document and the Divestiture Date. The United States, in its sole discretion, will resolve any disagreement relating to which employees are Relevant Personnel.

S.    "Transaction" means Constellation's acquisition of Calpine that is the subject of the "Agreement and Plan of Merger" between Constellation and Calpine dated January 10, 2025.

10

## III.    APPLICABILITY

A.    This Final Judgment applies to Constellation, Calpine, and CPN, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B.    If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirers.

## IV.    DIVESTITURES

A.    Defendants are ordered and directed to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States, in its sole discretion, after consultation with Texas. Defendants must enter into a definitive contract or contracts for sale of the Divestiture Assets within 240 calendar days after consummation of the Transaction. The United States, in its sole discretion, may grant up to two thirty (30) day extensions of this time period, not to exceed sixty (60) calendar days in total, and will notify the Court in such circumstances. Defendants must seek Regulatory Approvals within five calendar days after the United States provides written notice pursuant to Paragraph VI.C. that it does not object to the proposed Acquirer or Acquirers. Defendants must divest the relevant Divestiture Assets no later than thirty (30) calendar days after receiving, for all of any Acquirer's Divestiture Assets, the last necessary Regulatory Approvals required for that Acquirer's Divestiture Assets. The United States, in its sole discretion, may grant up to one fifteen (15) day extension of this time period, and will notify the Court in such circumstances. For the avoidance

11

of doubt, the deadlines set forth in this Paragraph apply independently to each set of Divestiture Assets (ERCOT Divestiture Assets and PJM Divestiture Assets), such that the timing of receipt of Regulatory Approvals required for divestiture of one set of Divestiture Assets does not provide a basis to delay the divestiture of the other set of Divestiture Assets. For the avoidance of doubt, the divestiture of assets to a particular Acquirer need only be completed once all relevant Regulatory Approvals have been received for all assets to be divested to that Acquirer.

B.    For all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the Divestiture Assets, Defendants must assign or otherwise transfer all contracts, agreements, and customer relationships to Acquirer or Acquirers within the deadlines for divestiture set forth in Paragraph IV.A; *provided, however*, that for any contract or agreement that requires the consent of another party to assign or otherwise transfer, Defendants must use best efforts to accomplish the assignment or transfer but it may not be a violation of this Final Judgment to fail to obtain the required consents. Defendants must not interfere with any negotiations between an Acquirer and a contracting party.

C.    Defendants must use best efforts to divest the Divestiture Assets as expeditiously as possible. Defendants must take no action that would jeopardize the completion of the divestitures ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Divestiture Assets.

D.    Unless the United States otherwise consents in writing, the divestitures pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with Texas, that the Divestiture Assets can and will be used by Acquirer or Acquirers as part of a viable,

12

ongoing business of electric generation services and that divestiture to Acquirer or Acquirers will remedy the competitive harm alleged in the Complaint.

E.    The divestitures must be made to one or more Acquirers that, in the United States' sole judgment, after consultation with Texas, have the intent and capability, including the necessary managerial, operational, technical, and financial capability, to compete effectively in the business of the provision of electric generation services.

F.    The divestitures must be accomplished in a manner that satisfies the United States, in its sole discretion, after consultation with Texas, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise an Acquirer's costs, to lower an Acquirer's efficiency, or otherwise interfere in the ability of an Acquirer to compete effectively in the provision of electric generation services.

G.    Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that it is demonstrated to the sole satisfaction of the United States, after consultation with Texas, that the criteria required by Paragraphs IV.D., IV.E., and IV.F. will still be met.

H.    In accomplishing the divestitures ordered by this Final Judgment, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets, except that, for Calpine's interest in the Gregory Power Plant, such notice of availability will be subject to any third-party rights under the existing partnership agreements relating to the Gregory Power Plant. Defendants must inform any person making an inquiry relating to a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that

13

are customarily provided in a due diligence process; *provided, however,* that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make all information and documents available to Plaintiffs at the same time that the information and documents are made available to any other person.

I.    Defendants must provide prospective Acquirers with (1) access to make inspections of the Divestiture Assets; (2) access to all environmental, zoning, and other permitting documents and information relating to the Divestiture Assets; and (3) access to all financial, operational, or other documents and information relating to the Divestiture Assets that would customarily be provided as part of a due diligence process. Defendants also must disclose all encumbrances on any part of the Divestiture Assets, including on intangible property. *Provided, however,* that a prospective Acquirer interested in purchasing only one or some of the Divestiture Assets must be provided with (1)-(3) for only the relevant Divestiture Assets of interest.

J.    Defendants must cooperate with and assist any Acquirer in identifying and, at the option of Acquirer, hiring all Relevant Personnel, including:

1.    Within 10 business days following receipt of a request by an Acquirer or a Plaintiff, Defendants must identify all Relevant Personnel to the requesting Acquirer and the Plaintiffs, including by providing organization charts covering all Relevant Personnel.

2.    Within 10 business days following receipt of a request by an Acquirer or a Plaintiff, Defendants must provide to the requesting Acquirer and Plaintiffs additional information relating to Relevant Personnel, including name, job title, reporting relationships, past experience, responsibilities, training and educational histories, relevant certifications, and job performance evaluations. Defendants must also provide to a requesting Acquirer and Plaintiffs

14

information relating to current and accrued compensation and benefits of Relevant Personnel, including most recent bonuses paid, aggregate annual compensation, current target or guaranteed bonus, if any, any retention agreement or incentives, and any other payments due, compensation or benefits accrued, or promises made to the Relevant Personnel. If Defendants are barred by any applicable law from providing any of this information, Defendants must provide, within 10 business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information, including specifically identifying the provisions of the applicable laws.

3.    At the request of an Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with the requesting Acquirer during normal business hours at a mutually agreeable location.

4.    Defendants must not interfere with any effort by an Acquirer to employ any Relevant Personnel. Interference includes offering to increase the compensation or improve the benefits of Relevant Personnel at any time after the date of the filing of this document, unless (a) the offer is part of an annual compensation increase or improvement in benefits pursuant to the Defendants' compensation and benefit programs existing as of December 1, 2025, (b) the offer is part of a tenure-based, automatic increase in compensation or improvement in benefits, (c) the offer is otherwise required pursuant to the terms of collective bargaining agreements relating to the Divested Assets, (d) the offer is consistent with the terms of the Asset Preservation and Hold Separate Stipulation and Order, or (e) the offer is approved by the United States in its sole discretion. Defendants' obligations under this Paragraph IV.J.4. will expire 150 calendar days after the Divestiture Date for the relevant Divestiture Assets.

15

5.      For Relevant Personnel who elect employment with an Acquirer within 150 calendar days of the Divestiture Date for the relevant Divestiture Assets, Defendants must waive all non-compete and non-disclosure agreements; vest and pay to the Relevant Personnel (or to Acquirer for payment to the employee) on a prorated basis any bonuses, incentives, other salary, benefits, or other compensation fully or partially accrued at the time of the transfer of the employee to Acquirer; vest any unvested pension and other equity rights; and provide all other benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

K.      Defendants must warrant to any Acquirer that (1) the Divestiture Assets to be divested to that Acquirer will be operational and without material defect on the date of their transfer to the Acquirer; (2) the Divestiture Assets to be divested to that Acquirer will be consistent with Good Utility Practice, subject to legal or regulatory restrictions on any of the Divestiture Assets in existence on the date of sale; (3) there are no material defects in the environmental, zoning, or other permits relating to the operation of the Divestiture Assets to be divested to that Acquirer; and (4) Defendants have disclosed all material encumbrances on any part of the Divestiture Assets to be divested to that Acquirer, including on intangible property. Following the sale of any Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits relating to the operation of those Divestiture Assets.

L.      Defendants must use best efforts to assist the Acquirer or Acquirers to obtain all necessary licenses, registrations, and permits to operate the relevant Divestiture Assets. Until an Acquirer obtains the necessary licenses, registrations, and permits, Defendants must provide that Acquirer with the benefit of Defendants' licenses, registrations, and permits to the full extent permissible by law.

M.      If any term of an agreement between Defendants and an Acquirer, including an agreement to effectuate any of the divestitures required by this Final Judgment, varies from a term of this Final Judgment, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.     APPOINTMENT OF DIVESTITURE TRUSTEE

A.      If Defendants have not divested all of the Divestiture Assets within the period specified in Paragraph IV.A., Defendants must immediately notify Plaintiffs of that fact in writing. Upon application of the United States, which Defendants may not oppose, the Court will appoint a divestiture trustee selected by the United States and approved by the Court to effect the divestiture of any of the Divestiture Assets that have not been sold during the time periods specified in Paragraph IV.A.

B.      After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell those Divestiture Assets that the divestiture trustee has been appointed to sell. The divestiture trustee will have the power and authority to accomplish the divestitures to an Acquirer or Acquirers acceptable to the United States, in its sole discretion, after consultation with Texas, at a price and on terms obtainable through reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment,

17

and will have other powers as the Court deems appropriate. The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C.      Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee. Objections by Defendants must be conveyed in writing to the United States and the divestiture trustee within 10 calendar days after the divestiture trustee has provided the notice of proposed divestiture required by Section VI.

D.      The divestiture trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the United States in its sole discretion.

E.      The divestiture trustee may hire at the cost and expense of Defendants any agents or consultants, including investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties. These agents or consultants will be accountable solely to the divestiture trustee and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion.

F.      The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and Defendants are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the divestiture trustee by the Court, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring

18

an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

G.    The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets by the divestiture trustee and all costs and expenses incurred. Within 30 calendar days of the Divestiture Date, the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendants, and the trust will then be terminated.

H.    Defendants must use best efforts to assist the divestiture trustee to accomplish the required divestitures, including best efforts to obtain all necessary Regulatory Approvals. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information relevant to the Divestiture Assets that the divestiture trustee may reasonably request. Defendants must not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestitures.

I.    The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by providing monthly reports to the Plaintiffs setting forth the divestiture trustee's efforts to accomplish the divestitures ordered by this Final Judgment. The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into

19

negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact.

J.  If the divestiture trustee has not accomplished the divestitures ordered by this Final Judgment within 180 calendar days of appointment, the divestiture trustee must promptly provide Plaintiffs with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestitures; (2) the reasons, in the divestiture trustee's judgment, why the required divestitures have not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestitures. Following receipt of that report, the United States may make additional recommendations to the Court. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment by a period requested by the United States.

K.  The divestiture trustee will serve until divestiture of all Divestiture Assets is completed or for a term otherwise ordered by the Court.

L.  If the United States determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute divestiture trustee.

## VI.  NOTICE OF PROPOSED DIVESTITURE

A.  Within two business days following execution of a definitive agreement to divest the Divestiture Assets, Defendants or the divestiture trustee, whichever is then responsible for effecting the divestitures, must notify Plaintiffs of the proposed divestiture. If the divestiture trustee is responsible for completing the divestiture, the divestiture trustee also must notify Defendants. The notice must set forth the details of the proposed divestiture and list the name,

20

address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B.     After receipt of the notice required by Paragraph VI.A., the United States, after consultation with Texas, may make one or more requests to Defendants or the divestiture trustee for additional information concerning the proposed divestiture, the proposed Acquirers, and other prospective Acquirers. Defendants and the divestiture trustee must furnish any additional information requested within 15 calendar days of the receipt of each request unless the United States provides written agreement to a different period.

C.     Within 45 calendar days after receipt of the notice required by Paragraph VI.A or within 20 calendar days after the United States has been provided the additional information requested pursuant to Paragraph VI.B, whichever is later, the United States will provide written notice to Defendants and any divestiture trustee that states whether the United States, in its sole discretion, after consultation with Texas, objects to the proposed Acquirers or any other aspect of the proposed divestitures. Without written notice that the United States does not object, a divestiture may not be consummated. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C. of this Final Judgment. Upon objection by Defendants pursuant to Paragraph V.C., a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

## VII.   FINANCING

Defendants may not finance all or any part of any Acquirer's purchase of all or part of the Divestiture Assets.

21

## VIII.  ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Defendants must take all steps necessary to comply with the Asset Preservation and Hold Separate Stipulation and Order entered by the Court.

## IX.  AFFIDAVITS

A.  Within 20 calendar days of entry of the Hold Separate Stipulation and Order in this matter, and every 30 calendar days thereafter until all divestitures required by this Final Judgment have been completed, each Defendant must deliver to Plaintiffs an affidavit, signed by each Defendant's Chief Financial Officer and General Counsel, describing in reasonable detail the fact and manner of that Defendant's compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

B.  Each affidavit required by Paragraph IX.A. must include: (1) the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers. Objection by the United States to information provided by Defendants to prospective Acquirers must be made within 14 calendar days of receipt of the affidavit, except that the United States may object at any time if the information set forth in the affidavit is not true or complete.

C.  Defendants must keep all records of any efforts made to divest the Divestiture Assets until one year after the Divestiture Date.

22

D.      Within 20 calendar days of the filing of the Complaint in this matter, each Defendant must deliver to Plaintiffs an affidavit signed by each Defendant's Chief Financial Officer and General Counsel that describes in reasonable detail all actions that Defendant has taken and all steps that Defendant has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

E.      If a Defendant makes any changes to actions and steps described in affidavits provided pursuant to Paragraph IX.A, the Defendant must, within 15 calendar days after any change is implemented, deliver to Plaintiffs an affidavit describing those changes.

F.      Defendants must keep all records of any efforts made to comply with Section IX until one year after the Divestiture Date.

## X.     COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Asset Preservation and Hold Separate Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon written request of an authorized representative of the Assistant Attorney General for the Antitrust Division and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.      to have access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents, wherever located, in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

23

2.      to interview, either informally or on the record, Defendants' officers, employees, or agents, wherever located, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## XI.    NO REACQUISITION

Defendants may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment without prior written authorization of the United States.

## XII.    PUBLIC DISCLOSURE

A.      No information or documents obtained pursuant to any provision in this Final Judgment may be divulged by Plaintiffs to any person other than an authorized representative of the executive branch of the United States or an authorized representative of Texas, except in the course of legal proceedings to which the United States or Texas are a party, including grand-jury proceedings, for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

B.      In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552, or similar state disclosure laws, for disclosure of information obtained pursuant to any provision of this Final Judgment, the United States will act in accordance with that statute and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information at 28 C.F.R. § 16.7, and Texas will act in accordance with its applicable disclosure laws. Defendants submitting information to the

24

Antitrust Division or Texas should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7 or the relevant state statute. Designations of confidentiality under 28 C.F.R part 16 expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

C.    If at the time that Defendants furnish information or documents to the United States or Texas pursuant to any provision of this Final Judgment, Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States and Texas must give Defendants 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XIII.  RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.  ENFORCEMENT OF FINAL JUDGMENT

A.    The United States and Texas retain and reserve all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. In a civil contempt action, a motion to show cause, or a similar action brought by the United States or Texas relating to an alleged violation of this Final Judgment, the United States or Texas may

25

establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the Plaintiffs allege was harmed by the challenged conduct. Defendants may be held in contempt of, and the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States or Texas to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, Defendant must reimburse the United States and Texas for the fees and expenses of their attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including in the investigation of the potential violation.

D.      For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States, may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt

26

remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XIV.

## XV.    EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court, Defendants, and Texas that the divestitures have been completed and continuation of this Final Judgment is no longer necessary or in the public interest.

## XVI.    PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment and the Competitive Impact Statement, public comments thereon, and any response to comments by the United States. Based upon the record before the Court, which includes the Competitive Impact Statement and, if applicable, any comments and response to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: 5/26/2026

_____
United States District Judge

27